FILED

2022 Sep-26  PM 12:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **JUDY HASBERRY,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| | ) | |
| **COMMISSIONER, SOCIAL** | ) | **Case No.: 2:21-cv-892-AMM** |
| **SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OF DECISION</u>

Plaintiff Judy Hasberry brings this action pursuant to the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her claim for supplemental security income. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Based on the court's review of the record, the court **AFFIRMS** the decision of the Commissioner.

## I.    Introduction

On August 14, 2019, Ms. Hasberry filed an application for supplemental security income under Title XVI of the Act, alleging disability beginning August 14, 2019. R. 18, 62–74, 182–86. Ms. Hasberry alleges disability due to neuropathy of her hands, legs, and feet. R. 62. She has at least a high school education and no past relevant work experience. R. 28.

The Social Security Administration ("SSA") initially denied Ms. Hasberry's application on October 23, 2019, and again denied it upon reconsideration on January 29, 2020. R. 18, 62–94. On February 10, 2020, Ms. Hasberry filed a request for a hearing before an Administrative Law Judge ("ALJ"). R. 18, 125–30. That request was granted. R. 125–30. Ms. Hasberry received a telephone hearing before ALJ Jeffrey L. Eastham on January 12, 2021. R. 18, 37–61. On January 26, 2021, ALJ Eastham issued a decision, finding that Ms. Hasberry was not disabled from August 14, 2019 through the date of his decision. R. 15–30. Ms. Hasberry was fifty-six years old at the time of the ALJ decision. R. 28, 62.

Ms. Hasberry appealed to the Appeals Council, which denied her request for review on May 28, 2021. R. 1–3. After the Appeals Council denied Ms. Hasberry's request for review, R. 1–3, the ALJ's decision became the final decision of the Commissioner and subject to district court review. On June 30, 2021, Ms. Hasberry sought this court's review of the ALJ's decision. *See* Doc. 1.

## II.   The ALJ's Decision

The Act establishes a five-step test for the ALJ to determine disability. 20 C.F.R. § 416.920. *First*, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). "Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. § 416.972(a). "Gainful work activity" is work that is done for pay or profit.

20 C.F.R. § 416.972(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 416.920(b). *Second*, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 416.920(a)(4)(ii), (c). Absent such impairment, the claimant may not claim disability. *Id*. *Third*, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 416.920(d), 416.925, 416.926. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 416.920(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ still may find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity, which refers to the claimant's ability to work despite her impairments. 20 C.F.R. §§ 416.920(e), 416.945. In the *fourth* step, the ALJ determines whether the claimant has the residual functional capacity to perform past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If the ALJ determines that the claimant is capable of performing past relevant work, then the claimant is deemed not disabled. *Id*. If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the *fifth* and final step. 20 C.F.R. § 416.920(a)(4)(v). In this step, the

ALJ must determine whether the claimant is able to perform any other work commensurate with her residual functional capacity, age, education, and work experience. 20 C.F.R. § 416.920(g)(1). Here, the burden of proof shifts from the claimant to the Commissioner to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 416.920(g)(1), 416.960(c).

The ALJ found that Ms. Hasberry had not engaged in substantial gainful activity since her application date. R. 20. The ALJ decided that Ms. Hasberry had the following severe impairments: chemotherapy-induced peripheral neuropathy; degenerative changes to the left hip; and mental health conditions. R. 20–21. The ALJ found that Ms. Hasberry's history of hypertension, diabetes mellitus, hyperlipidemia, and hypokalemia were not severe because "the record does not establish that these issues have resulted in limitations to [Ms. Hasberry's] ability to perform basic work activities." R. 22. Overall, the ALJ determined that Ms. Hasberry did not have "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" to support a finding of disability. R. 22.

The ALJ found that Ms. Hasberry had the "residual functional capacity to perform medium work" with certain limitations. R. 25–26. The ALJ determined that

Ms. Hasberry may: frequently reach, handle, and finger; frequently balance, stoop, and kneel; and occasionally crouch and crawl. R. 25. The ALJ also determined that Ms. Hasberry must not: push/pull or operate foot controls with the bilateral lower extremity; climb ramps, stairs, ladders, ropes, or scaffolds; work at unprotected heights, with or near dangerous machinery or equipment, or operate a motorized vehicle as a work requirement. R. 25. The ALJ also determined that Ms. Hasberry: should avoid concentrated exposure to extreme cold and vibration; can perform simple goal-oriented tasks, but not at production rate or pace; can understand and follow simple, routine rote instructions; make simple, routine decisions; have work-related contact with co-workers frequently, and occasionally with the public; and tolerate occasional changes in the workplace setting. R. 25–26.

According to the ALJ, Ms. Hasberry "has no past relevant work." R. 28. According to the ALJ, Ms. Hasberry is of "advanced age," and she has "at least a high school education," as those terms are defined by the regulations. R. 28. The ALJ determined that "[t]ransferability of job skills is not an issue because [Ms. Hasberry] does not have past relevant work." R. 29. Because Ms. Hasberry's "ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations," the ALJ enlisted a vocational expert to ascertain "the extent to which these limitations erode the unskilled medium occupational base." R. 29. That expert testified that such individual "would be able to perform the

requirements of representative occupations such as a linen-room attendant . . . , stubber . . . , and hospital cleaner" as well as "marker . . . , silver wrapper[, and] office helper." R. 29.

Based on these findings, the ALJ concluded that Ms. Hasberry had not been under a disability, as defined in the Act, since August 14, 2019. R. 30. Ms. Hasberry now challenges that decision.

## III. Factual Record

The alleged disability onset date is August 14, 2019, and the only argument before the court relates to limitations from Ms. Hasberry's peripheral neuropathy and hip pain. Therefore, only medical evidence related to her neuropathy and hip pain is discussed below.

Ms. Hasberry was diagnosed with breast cancer in April of 2015. R. 608. Ms. Hasberry underwent a partial mastectomy on June 1, 2015. R. 659, 768–69. Ms. Hasberry underwent an initial consultation with Dr. Stephen Beck at Alabama Oncology on June 30, 2015. R. 631–32. Ms. Hasberry underwent chemotherapy followed by radiation to treat her breast cancer. R. 613.

Ms. Hasberry first reported complaints of neuropathy on December 3, 2015. R. 616. "She complain[ed] of pain in her fingertips[,] but otherwise ha[d] no other manifestations of neuropathy." R. 616. At that visit, Dr. Beck diagnosed Ms.

Hasberry with grade 1 "Chemotherapy induced neuropathy" and noted that chemotherapy would continue. R. 616.

On December 28, 2015, Ms. Hasberry returned to Dr. Beck and reported "no complaints whatsoever." R. 615. On February 8, 2016, Ms. Hasberry returned to Dr. Beck and reported "no medical complaints at this time." R. 614. On May 2, 2016, Ms. Hasberry returned to Dr. Beck and complained of "continued neuropathy to her hands and feet" and also reported "occasional leg cramps and achiness." R. 613.

Ms. Hasberry presented to St. Vincent's on May 17, 2016 for a six-month re-check. R. 725. The treatment notes indicate that "[s]he also has some problems with neuropathy but this is slowly resolving." R. 725. Ms. Hasberry presented to St. Vincent's on September 23, 2016 for a radiation follow-up. R. 722. She had been "doing well" with no "musculoskeletal complaints." R. 722. Ms. Hasberry presented to St. Vincent's on April 7, 2017 for a radiation follow-up. R. 712. For the six months preceding that appointment, "she ha[d] been doing quite well," with no complaints and was advised to return in six months. R. 712.

Ms. Hasberry presented to the St. Vincent's Emergency Department on July 30, 2017 with complaints of hypertension. R. 866. The physical exam revealed: "Normal strength and range of motion. No swelling or tenderness." R. 870.

Ms. Hasberry presented to St. Vincent's on October 12, 2017 for a radiation follow-up. R. 708. At that time, Ms. Hasberry was doing well and advised to return in six months. R. 708.

Ms. Hasberry presented to the St. Vincent's Emergency Department on December 23, 2017 with nausea, vomiting, and diarrhea. R. 842. She denied headache, numbness, and weakness, and had "Normal ROM, normal strength." R. 846, 848.

Ms. Hasberry presented to St. Vincent's on May 9, 2018 for a radiation follow-up. R. 702. The Progress Notes indicate that Ms. Hasberry had been doing well and would return for a follow-up visit in six months. R. 703.

Ms. Hasberry presented to the St. Vincent's Emergency Department on September 7, 2018 with right knee pain. R. 824. Ms. Hasberry presented to the St. Vincent's Emergency Department on February 10, 2019 with a headache. R. 804. The medical history and visit notes do not mention neuropathy or related complaints, and Ms. Hasberry was noted to have "Normal ROM, normal strength." R. 804–05.

On April 25, 2019, Ms. Hasberry returned to Dr. Beck for a follow-up visit. R. 926. Included in her diagnosis was "Chemotherapy-induced neuropathy." R. 926. At the visit she was found to have: "Normal gait and station. . . . Strength and tone normal. . . . No joint swelling." R. 928.

8

Ms. Hasberry presented to Christ Health Center on August 16, 2019 to establish care and for pain in her right leg. R. 882. Included in her list of problems was "Chemotherapy-induced peripheral neuropathy – Onset: 08/16/2019." R. 883. At the visit, Ms. Hasberry's acute concern was "R hip pain that comes and goes" and "radiate[s] down to her knee." R. 884. Ms. Hasberry reported that her pain had been present for a month, was "triggered by walking a lot," and was "located in both legs and feet." R. 884. Ms. Hasberry had tried Aleve without relief. R. 884. At the visit, Ms. Hasberry was "ambulating normally" had "normal tone and motor strength." R. 884–85. Although her right hip was tender, she had good range of motion. R. 885. She also had normal gait. R. 885. She was prescribed lose-dose gabapentin for her neuropathy, advised to take Ibuprofen for osteoarthritis in her right hip, and advised to follow up in two weeks. R. 885.

Ms. Hasberry presented to Christ Health Center on August 30, 2019 for a mammogram. R. 880–81. Included in her list of problems was "Chemotherapy-induced peripheral neuropathy – Onset: 08/16/2019." R. 880. She was advised to return to the clinic in three months. R. 882.

On November 11, 2019, Ms. Hasberry returned to Dr. Beck for a follow-up visit. R. 933. Included in her diagnosis was "Chemotherapy-induced neuropathy." R. 933. At the visit she was found to have: "Normal gait and station. . . . Strength and tone normal. . . . No joint swelling." R. 935.

Ms. Hasberry presented to Christ Health Center on December 3, 2019. R. 906. Included in her list of problems was "Chemotherapy-induced peripheral neuropathy – Onset: 08/16/2019." R. 907. She was "ambulating normally," had "normal tone and motor strength," had "normal movement of all extremities," and had "normal gait and station." R. 909. To treat her peripheral neuropathy, she was advised to "[c]ontinue low dose Gabapentin." R. 909.

Ms. Hasberry presented to Christ Health Center on March 3, 2020. R. 899. She complained of leg cramps that she suspected were induced by Simvastatin. R. 899. Included in her list of problems was "Chemotherapy-induced peripheral neuropathy – Onset: 08/16/2019." R. 900. At the visit, Ms. Hasberry was "ambulating normally" with "normal tone and motor strength" and "normal gait." R. 901–02. Her peripheral neuropathy was noted to be "progressive and worse at night," and her gabapentin dose was increased. R. 902.

Ms. Hasberry presented to Christ Health Center on June 9, 2020. R. 915. Included in her list of problems was "Chemotherapy-induced peripheral neuropathy – Onset: 08/16/2019." R. 916. The visit notes indicate that she had "paresthesias to R leg and R toes; increase in gabapentin has helped a little bit." R. 918. At the visit, she was "ambulating normally," had "normal tone and motor strength," and had "normal gait." R. 918. Her peripheral neuropathy was noted to be "stable," and she was advised to "continue current therapy." R. 919.

Ms. Hasberry had a telehealth appointment with Christ Health Center on September 14, 2020. R. 937. Included in her list of problems was "Chemotherapy-induced peripheral neuropathy – Onset: 08/16/2019"; "Pain in bilateral legs – Onset: 9/14/2020"; and "Bilateral hip joint pain – Onset 9/14/2020." R. 938. Ms. Hasberry complained that the "gabapentin just makes her sleep," that she was still hurting, and that her "bilateral legs ache 'all the time.'" R. 940. She described her bilateral leg pain as a "constant ache" that "starts [at her] bilateral hips all the way down legs," and that was present "at rest and while ambulating." R. 940. Her peripheral neuropathy was noted to be "stable," and she was advised to "continue current therapy." R. 940. The visit notes indicate that the pain in Ms. Hasberry's bilateral legs "does not seem to be . . . neuropathy based off descriptors" and it was recommended Ms. Hasberry take an NSAID; use massage, heat therapy, and stretching; and consume adequate hydration. R. 941.

Ms. Hasberry underwent an X-ray of her left hip on October 8, 2020. R. 951. It showed "mild degenerative change." R. 951.

Ms. Hasberry presented to Christ Health Center on November 17, 2020. R. 952. Included in her list of problems was "Chemotherapy-induced peripheral neuropathy – Onset: 08/16/2019"; "Pain in bilateral legs – Onset: 9/14/2020"; and "Bilateral hip joint pain – Onset 9/14/2020." R. 953. The visit notes indicate that her "paresthesias [was] moderately controlled with gabapentin: feet." R. 955. At the

visit, she was "ambulating normally" and had "normal gait." R. 956. Her peripheral neuropathy was noted to be "stable," and she was advised to "continue current therapy." R. 956.

Ms. Hasberry presented to Christ Health Center on December 17, 2020 for a mammogram. R. 966. Included in her list of problems was "Chemotherapy-induced peripheral neuropathy – Onset: 08/16/2019"; "Pain in bilateral legs – Onset: 9/14/2020"; and "Bilateral hip joint pain – Onset 9/14/2020." R. 967. The visit notes indicate that she had "paresthesias to R leg and R toes; increase in gabapentin has helped a little bit." R. 918. At the visit, she was "ambulating normally," had "normal tone and motor strength," and had "normal gait." R. 918.

## IV.   Standard of Review

This court's role in reviewing claims brought under the Act is a narrow one. The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. §§ 405(g), 1383(c)(3); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The Act mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *see* 42 U.S.C. §§ 405(g), 1383(c)(3). This court may not reconsider the facts, reevaluate the evidence, or

substitute its judgment for that of the Commissioner; instead, it must review the record as a whole and determine if the decision is reasonable and supported by substantial evidence. *See Martin*, 894 F.2d at 1529 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239). If the Commissioner's factual findings are supported by substantial evidence, they must be affirmed even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. No decision is automatic, for "[d]espite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## V.    Discussion

Ms. Hasberry alleges that the ALJ's decision should be reversed because the ALJ failed to properly consider Ms. Hasberry's subjective complaints. Doc. 10 at 5. Specifically, Ms. Hasberry alleges that the ALJ "failed to properly evaluate [her]

complaints consistent with the Eleventh Circuit Pain Standard," and his "rationale to support his conclusion is inadequate and is not supported by substantial evidence." *Id.* at 5, 8.

A claimant's subjective complaints are insufficient to establish a disability. *See* 20 C.F.R. § 416.929(a); *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991). Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). The Eleventh Circuit applies a two-part pain standard when a claimant claims disability due to pain or other subjective symptoms. The claimant must show evidence of an underlying medical condition and either (1) objective medical evidence that confirms the severity of the alleged symptoms arising from the condition, or (2) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged symptoms. *See* 20 C.F.R. § 416.929(a), (b); Social Security Ruling 16-3p, 2017 WL 5180304, at *3–*4 (Oct. 25, 2017) ("SSR 16-3p"); *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).

If the first part of the pain standard is satisfied, the ALJ then evaluates the intensity and persistence of a claimant's alleged symptoms and their effect on her ability to work. *See* 20 C.F.R. § 416.929(c); *Wilson*, 284 F.3d at 1225–26. In evaluating the extent to which a claimant's symptoms affect his capacity to perform

basic work activities, the ALJ will consider (1) objective medical evidence, (2) the nature of a claimant's symptoms, (3) the claimant's daily activities, (4) precipitating and aggravating factors, (5) the effectiveness of medication, (6) treatment sought for relief of symptoms, (7) any measures the claimant takes to relieve symptoms, and (8) any conflicts between a claimant's statements and the rest of the evidence. *See* 20 C.F.R. § 416.929(c)(3), (4); SSR 16-3p at *4, *7–*8. "In determining whether a claimant's impairments limit [his] ability to work, the ALJ considers the claimant's subjective symptoms, which includes the effectiveness and side effects of any medications taken for those symptoms." *Walker v. Comm'r*, 404 F. App'x 362, 366 (11th Cir. 2010). To discredit a claimant's statements, the ALJ must clearly "articulate explicit and adequate reasons." *See Dyer*, 395 F.3d at 1210.

An ALJ's review "must take into account and evaluate the record as a whole." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). There is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision. *Jacobus v. Comm'r of Soc. Sec.*, 664 F. App'x 774, 776 (11th Cir. 2016). Instead, the ALJ must consider the medical evidence as a whole and not broadly reject the evidence in the record. *Id.*

A credibility determination is a question of fact subject only to limited review in the courts to ensure the finding is supported by substantial evidence. *See Hand v. Heckler*, 761 F.2d 1545, 1548–49 (11th Cir. 1985), *vacated for rehearing en banc*,

774 F.2d 428 (11th Cir. 1985), *reinstated sub nom., Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986). The Eleventh Circuit will not disturb a clearly articulated finding supported by substantial evidence. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). However, a reversal is warranted if the decision contains no indication of the proper application of the pain standard. *See Ortega v. Chater*, 933 F. Supp. 1071, 1076 (S.D.F.L. 1996) (holding that the ALJ's failure to articulate adequate reasons for only partially crediting the plaintiff's complaints of pain resulted in reversal). "The question is not . . . whether [the] ALJ could have reasonably credited [claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

After explaining the pain standard, the ALJ considered Ms. Hasberry's testimony about her symptoms to make his credibility determination. R. 26. With respect to her physical symptoms the ALJ described Ms. Hasberry's testimony as follows:

> The claimant alleged, during the hearing, that her legs and feet would swell and she experienced pain, due to neuropathy as a result of her chemotherapy, and was unable to walk for long periods. Her medications caused sleepiness and that she slept most of the day, and she had pain in her hips, which made it difficult to sit or stand for long periods of time. She could stand or walk for only 20 to 30 minutes at a time; lift/carry no more than 10 pounds comfortably; and sit for 10-15 minutes. She rated her pain most days as a 9 on a 10-point scale.

R. 26. The ALJ "evaluated" Ms. Hasberry's "impairments to assess the effect that they have on [her] ability to perform routine movement and necessary physical activity within the work environment." R. 26. The ALJ noted that "the documentary evidence establishes underlying medical conditions capable of producing some pain and other limitations," but "the substantial evidence does not support the conclusion that the objectively determin[able] medical conditions are of such severity that they could reasonably be expected to give rise to disabling pain and other limitations." R. 26. However, the ALJ stated that "the treatment records document that [Ms. Hasberry] has continued to experience some limitations due to residual effects of her chemotherapy and degenerative changes to her hip." R. 26.

The ALJ considered the objective medical evidence from Christ Health Center and Dr. Beck, and specifically cited Ms. Hasberry's visits on August 30, 2019, November 11, 2019, December 3, 2019, March 3, 2020, June 9, 2020, September 14, 2020,[1] November 17, 2020, and December 17, 2020. R. 26–27. After considering this medical evidence along with the "entire case record," the ALJ concluded that

> the intensity, frequency, duration, and functionally limited effects of [Ms. Hasberry's] symptoms, including pain, preclude [her] from performing a full range of exertional tasks. However, there is no evidence that [Ms. Hasberry's] impairments preclude her from performing work at the medium level of exertion, as this level of work activity

---

[1] The ALJ's decision includes a scrivener's error for the date of this visit. It states the visit occurred on September 14, 2019, R. 27, however, the visit occurred on September 14, 2020. R. 937.

> appears consistent with the available treatment records, as
> [a Christ Health Center nurse] related that [Ms. Hasberry]
> continued to ambulate normally, and had normal tone and
> motor strength with a normal gait. She classified [Ms.
> Hasberry's] peripheral neuropathy as stable."

R. 28.

Ms. Hasberry argues that the ALJ erred at step two of the pain standard because he did not provide an adequate rationale "that substantial evidence did not support the conclusion that the objectively determinable medical conditions were of such a severity that they could reasonably be expected to give rise to disabling pain and limitations." Doc. 10 at 8. Specifically, she argues that by citing evidence that she was ambulating normally, had normal tone and motor strength, had normal gait, and stable peripheral neuropathy, the ALJ "ignored, overlooked[,] or mischaracterized parts of [Ms. Hasberry's] medical record." *Id.* She also argues that the ALJ "did not consider the impact of the side effect of [Ms. Hasberry's] medication when making his determination that she was capable of performing medium work on a full-time basis." *Id.* at 13.

Substantial evidence supports the ALJ's finding under the pain standard. As the Commissioner noted, "[c]ontrary to [Ms. Hasberry's] allegations, the ALJ expressly provided his basis for discounting [her] subjective pain complaints." Doc. 12 at 7 (citing R. 20–30).

In analyzing Ms. Hasberry's testimony, the ALJ clearly discussed the objective medical evidence such as the specific visits related to her peripheral neuropathy and hip pain, including her statements at those visits and physical examination results, and a hip X-ray revealing "mild degenerative change" R. 20, 26–27. Ms. Hasberry argues that the ALJ failed to mention references in her medical records to the pain from her peripheral neuropathy, for example that she "ached all of the time," and the Gabapentin helped "a little bit." Doc. 10 at 12–13. However, the ALJ was not required to specifically refer to every piece of evidence in his decision. *Jacobus v. Comm'r of Soc. Sec.*, 664 F. App'x 774, 776 (11th Cir. 2016). The ALJ's decision indicates that he considered the medical evidence as a whole and did not broadly reject the evidence in the record. In fact, in light of Ms. Hasberry's peripheral neuropathy and hip pain, the ALJ included an additional limitation in her residual functional capacity noting that her "impairments preclude her ability to use her bilateral lower extremities to push/pull or operate foot controls, or perform various manipulative tasks on a continuous basis." R. 27.

Additionally, the ALJ clearly included Ms. Hasberry's complaints of medication side effects in his decision and residual functional capacity. The ALJ stated that he "accept[ed] that the combination of [Ms. Hasberry's] underlying symptomology and possible side effects from her prescribed medications, such as sleepiness, would reasonably interfere with [her] ability to maintain attention and

concentration to acquire and use complex or detailed information to perform complex, detail oriented tasks." R. 24. The ALJ also stated that he did not include production rate or pace in the residual functional capacity "due to possible side effects of her medication." R. 28. The ALJ did not discredit Ms. Hasberry's allegations of side effects from her medications, but rather incorporated the effects of her medication into the residual functional capacity.

The ALJ was not "clearly wrong" to discredit Ms. Hasberry's subjective complaints. *See Werner*, 421 F. App'x at 938–39. Additionally, Ms. Hasberry has pointed to no evidence that would compel a different conclusion from that found by the ALJ. There is no evidence in the record to support Ms. Hasberry's testimony that her peripheral neuropathy and hip pain prevents medium work with the restrictions identified by the ALJ. Accordingly, there is no error in the ALJ's consideration of Ms. Hasberry's subjective complaints.

## VI.   Conclusion

Upon review of the administrative record, the court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** and **ORDERED** this 26th day of September, 2022.

**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE